**Robert L. WEISSMAN, Appellee,**

v.

**OFFICER OF THE DAY, "John Doe," Commanding Officer, Armed Forces Examination and Induction Station, Fort Hamilton, Brooklyn, New York, and Local Board No. 3, Appellants.**

**No. 705, Docket 35566.**

United States Court of Appeals, Second Circuit.

Argued June 7, 1971.

Decided July 2, 1971.

David J. Weinstein, New York City (Kazdin & Weinstein, New York City, of counsel), for appellee.

Lloyd H. Baker, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., E.D.N. Y., and David G. Trager, Asst. U. S. Atty., of counsel), for appellants.

Before FRIENDLY, Chief Judge, and HAYS and OAKES, Circuit Judges.

FRIENDLY, Chief Judge:

This is an appeal by the Government from an order of the District Court for the Eastern District of New York, Joseph C. Zavatt, *Judge,* granting appellee's petition for a writ of habeas corpus to be released from the army on the ground that there was no basis in fact for classifying him I–A in light of his claim of extreme personal hardship. Disagreeing with the district court's conclusion and finding appellee's other contention to be without merit, we reverse.

In February, 1964, while a full-time student at Hofstra University, petitioner Weissman received a II–S student deferment from his local draft board. He married in mid-1966. In November,

1967, he applied for and received a continuation of his II–S deferment at a time when, to his knowledge, the Selective Service Act of 1967 provided that any registrant receiving a student deferment would be ineligible to receive a dependency deferment except in cases of "extreme hardship to dependents." 50 U.S.C. App. § 456(h) (1). In December, 1968, Weissman advised his local board that because of his wife's pregnancy and his father's illness, his financial burdens had increased and that he desired permission to leave school and find a full-time job and receive a III–A classification. The board sent him an SSS Form 118 Dependency Questionnaire which he completed, listing as his primary claims the total financial dependency of his unemployed, pregnant wife and the contribution which he made to the financial support of his parents, with his father being seriously ill. With this in hand, the local board requested the Nassau County Department of Welfare to investigate the case. The Welfare Department report indicated that if Weissman were inducted, his family circumstances were such that he would be presumptively eligible for supplementary assistance.

On March 19, 1969, Weissman was reclassified I–A. He wrote the board to request an appeal and received a second Dependency Questionnaire which he returned, listing his wife as totally and his father as partially dependent upon him for financial support. On May 21, 1969, he appeared before his local board to explain his request for a III–A classification. The summary of the proceedings before the local board indicates that the questioning centered on the matter of the father's dependency, with his wife's pregnancy receiving only passing mention. The board again classified him I–A. Weissman appealed to the Appeal Board which, on October 14, 1969, voted not to disturb his I–A classification. In November, 1969, Weissman passed his physical examination, and on January 20, 1970, he received an induction notice.

Meanwhile, in June, 1969, his wife had given birth and, with his father's condition worsening, Weissman wrote the board on March 16, 1970, to ask that his I–A classification be reconsidered in light of the extreme financial hardship that his induction would impose on his wife and child and the mental hardship it would impose on his parents. In April, 1970, his father died, and on May 6th, Weissman wrote the board one last time to ask that they reopen and consider his classification anew in light of his wife's and son's financial dependency and his mother's need for physical, emotional, and financial support in the wake of his father's death. The board took no action. On May 25, 1970, Weissman submitted to induction and promptly filed the habeas petition with which we are now concerned.

The district judge recognized the question to be whether there was a basis in fact for the board's denying Weissman his requested III–A classification. Without deciding, the judge suggested that the record "clearly indicates" that there was a basis in fact for denying the claim insofar as it related to the alleged dependency of Weissman's father. We quite agree with this in light of the facts that he only partially contributed to his father's support and that he had a brother without children and an unmarried sister who was a teacher. Indeed, Weissman does not argue otherwise on this appeal.

██ Instead, he stoutly defends the district court's finding that the board had no basis in fact for rejecting his extreme hardship claim as it related to the dependency of his wife and that the board, indeed, "never considered this claim." The lower court arrived at this conclusion as a result of its reading of the summary of Weissman's personal appearance and of the testimony given in court by local board member Vincent J. Floriani. The court appears to have been most heavily impressed by the board's failure to propound questions relating to the wife's dependency claim at the personal appearance. However, so

long as there is a basis in fact in the registrant's selective service record for finding that his wife's alleged dependency did not amount to "extreme hardship", a court cannot overturn the board's determination simply because the claim was not aired at the registrant's personal appearance.[1] If Weissman's selective service record does provide a basis in fact for denying him a III–A extreme hardship deferment either for his father or his wife, we are not confronting a case, such as Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955), where the board may have relied on an illegitimate ground in refusing the classification. When a local board fails to identify the ground upon which it based its decision to deny the requested classification, see United States v. Messinger, 413 F.2d 927, 930 (2 Cir. 1969), cert. denied 399 U.S. 927, 90 S.Ct. 2230, 26 L.Ed.2d 792 (1970), our only inquiry is whether all the grounds upon which the board might have relied were legally correct and whether each of them was supported by a basis in fact. Cf. United States v. French, 429 F.2d 391 (9 Cir. 1970).

█ Looking to the board's action in denying the III–A classification with regard to the wife's dependency, we are reminded that having received a student deferment, Weissman had to make a showing of extreme hardship, not merely paternity, in order to qualify. Even if his wife had no other source of support, Weissman would receive pay and allowances in the army and could turn these over to her. In addition, the fact that Weissman had completed three and one-half years of college meant that he would have a good possibility of becoming an officer, with correspondingly higher pay. Moreover, his wife, who had worked before their marriage and who had the use of their fully paid, late model car, could presumably find a job if someone could be found who would mind the expected child. Apart from other possibilities, her parents lived in the area. Something is sought to be made of the fact that her father had lost an arm in World War II. But there was no evidence that the presence of a child in the house during the day would adversely affect his condition; in fact, it appears that he was then holding a $10,000 per year job despite his handicap. The test is not inconvenience, or even hardship, but extreme hardship. The Armed Forces must contain thousands of men whose departure from civilian life caused more financial hardship than Weissman established.

Finally, Weissman contends that the board improperly refused to reopen his I–A classification when, after he had received his initial induction notice, he informed the board of new facts—to wit, the birth of his child and the death of his father—which had not been before the board when it classified him I–A and afforded him a personal appearance. The former was a "new fact" only in the limited and here irrelevant sense that what had been considered a high probability from Weissman's first application had now transpired. Nothing in the baby's actual arrival changed the situation, as it might, for example, if the child had been born with a serious illness requiring large added expense. And while the father's death was a "new fact," the board had already considered the financial and emotional strain which his father's terminal illness placed upon the family, and the death appears to have lightened the financial burden rather than increased it. While Weissman had stated at his personal appearance that his father had an income of about $563.00 per month (including $200.00 contributed by Weissman), his letter apprising the board of his father's death stated that his mother's income would now be approximately $680.00 per month from dividends and interest, and that she was living in a house she owned in Sarasota, Florida. In this respect, the

---

1. That the board did not ignore the claim of his wife's dependency is evidenced by the fact that it requested the Nassau County Department of Welfare to investigate the case.

case differs from Petrie v. United States, 407 F.2d 267 (9 Cir. 1969), on which Weissman relies. For in *Petrie,* the registrant's father had been killed suddenly in a plane crash, leaving a quarter million dollars in debts and a widow whose only means of support was the registrant. So far as the emotional strain on his mother was concerned, the board was justified in believing it not to create the extreme hardship condition contemplated by the statute. The mere fact of emotional strain does not create a prima facie case for a III–A deferment. This is especially true where, as here, the emotional strain has existed for some time and been considered by the board in the context of the father's terminal cancer and the registrant is not an only child.

Since the record demonstrated ample basis for the board's action, the order directing petitioner's release from the Armed Forces is reversed.